IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DAVID S. ZROWKA,<br>         Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br>a Delaware corporation,<br><br>         Defendant. | **CV-21-61-GF-BMM**<br><br>**ORDER** |

INTRODUCTION

Plaintiff David Zrowka ("Zrowka"), a train conductor and railroad engineer who has worked for Defendant BNSF Railway Company ("BNSF") out of Great Falls, Montana, filed suit against his employer alleging personal injury resulting from his employment. (Doc. 19 at 2.) Zrowka alleges the following three causes of action: (1) BNSF failed to uphold its duty to provide Zrowka with a reasonably safe place to work pursuant to the Federal Employers' Liability Act ("FELA") when it failed to install, remove, repair, and maintain safe materials and appliances around which Zrowka was required to work; (2) BNSF negligently assigned Zrowka to a work assignment that it knew or should have known posed a special risk to Zrowka following his back surgery, in violation of FELA; and (3) BNSF subjected Zrowka to repetitive and cumulative trauma that caused injury to his spine, in violation of

1

FELA, the Federal Locomotive Inspection Act ("LIA"), Federal Railroad Administrative regulations, and other safety statutes and regulations. (Doc. 19 at 4-9.)

BNSF filed a motion for partial summary judgment, (Doc. 25), followed by several motions regarding the admissibility of evidence at trial. (Docs. 28, 30, 33, & 35.) The Court heard oral argument on all motions on March 16, 2023. (Doc. 59.) The Court referred Parties to mediation, which was held on April 21, 2023. (Doc. 67.) The parties did not settle. (*Id*.) Trial is scheduled for June 5, 2023. The Court addresses BNSF's motion *in limine* and motions to strike three expert reports filed by Plaintiff in a separate order. The Court grants BNSF's motion for partial summary judgment with respect to Plaintiff's negligent assignment claim and denies the motion as to Plaintiff's FELA and cumulative trauma claims for the reasons set forth below.

## BACKGROUND

Plaintiff David Zrowka filed suit against BNSF, alleging personal injury in his railroad employment within the State of Montana. (Doc. 19 at 2.) Zrowka has worked as a BNSF conductor and/or engineer out of Great Falls, Montana since October 2018. He typically worked the route between Great Falls and Laurel. Zrowka alleges that on August 24, 2019, he suffered sudden, intense back pain while assigned on a two-person crew hauling a freight train from Great Falls to Laurel.

The pain did not resolve during the trip. (*Id*. at 3.) The next day, on August 25, 2019, Zrowka's pain intensified as he worked on a two-person crew hauling freight from Laurel back to Great Falls. (*Id*. at 3.) Zrowka could not operate the train for the full trip. He laid on the floor of the locomotive to relieve his back pain. (*Id*.)

Zrowka allegedly reported his back injury to BNSF. BNSF removed Zrowka from service. (*Id*.) Zrowka underwent back surgery shortly thereafter in September 2019, and then returned to work for BNSF in December 2019. (*Id*. at 3-4.) Zrowka alleges that BNSF assigned him to the same conductor/engineer duties on the Great Falls to Laurel locomotive route upon his return. (*Id*. at 3.) Zrowka alleges that he suffered a new, acute back injury while working for BNSF in April 2020, was removed from service again, and underwent a second back surgery in April 2020. *Id*.)

Zrowka brings three causes of action. Zrowka first alleges that BNSF failed to uphold its duty under the Federal Employers' Liability Act, 45 U.S.C. § 50 ("FELA"), to provide Zrowka with a reasonably safe place to work because BNSF did not properly maintain its locomotives. (*Id*. at 4.) Zrowka next alleges that BNSF negligently assigned him to work between December 2019 and April 2020 that was hazardous to Zrowka because of his back injury. (*Id*. at 5.) Zrowka's third cause of action alleges that BNSF subjected Zrowka to repetitive and cumulative trauma that caused injury to his spine due to poorly and negligently maintained locomotives,

seats, and tracks that failed to prevent Zrowka from long-term exposure to jolts, shocks, and vibrations. (*Id.* at 7.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party's initial burden 'may be discharged by showing . . . that there is an absence of evidence to support the non-moving party's case.'" *Clemons v. BNSF Ry. Co.*, 2016 U.S. Dist. LEXIS 194121, at *12 (quoting *Celotex Corp.*, 477 U.S. at 325). The mere existence of a scintilla of evidence supporting a plaintiff's position that a genuine dispute of fact exists is insufficient. *Id.*, at *13. There must be evidence on which the jury could reasonably find for the plaintiff. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## DISCUSSION

### I. Negligent Assignment

A railroad has a duty to assign employees to work for which they are reasonably suited. *Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 909 (8th Cir. 1980). A railroad breaches that duty if it assigns an employee to perform work

beyond their physical capacity. *Id.* In other words, a railroad remains liable if it knew or should have known that the assignment exposed the particular employee to an unreasonable risk of harm. *Id.* (citing *Dunn v. Conemaugh & Black Lick R. R.*, 267 F.2d 571, 576 (3rd Cir. 1959). When a physician clears the employee to return to heavy labor, the employee must then "show that the railroad knew or should have known that the employee was unfit for the work because of his condition." *Fletcher*, 621 F.2d at 909.

To create a factual issue for his negligent work assignment claim, Zrowka must show that a work restriction existed or that he requested a transfer to a different work assignment. *See Danko v. Union Pac. R.R.*, 2007 U.S. Dist. LEXIS 46972, at *9. In *Danko*, the engineer plaintiff took two months off work to have surgery on his shoulder and wrists. *Id.*, at *8. After the surgeries, the plaintiff returned to work without restriction, and none of his doctors opined that he should not be working as an engineer. *Id.*, at *9. Additionally, the plaintiff did not ask for a different work assignment or request a transfer to a different division. *Id.* The plaintiff alleged after three years of not having sought medical treatment for the injuries, that the continued cumulative trauma of his work resulted in the return of his injuries that required further surgery. *Id.*, at *5, 9. The court granted summary judgment to the railroad on the basis that the plaintiff had "failed to create a fact issue of whether [the railroad] knew or should have known that they were assigning him to work that exceeded his

physical capacity." *Id.*, at *9. The court reasoned that the plaintiff had not presented evidence that he attempted to transfer jobs or informed the railroad that work was causing him injuries. *Id.* (citing *Emmons v. Southern Pac. Transp. Co.*, 701 F.2d 1112, at 1121 (5th Cir. 1983) (finding no evidence of the railroad's alleged awareness of the plaintiff's injury when the plaintiff only inquired about the possibility of a transfer but "did not seriously pursue it or make an application…")).

Zrowka has failed to present any evidence that BNSF knew or should have known that he was unfit to return to the Laurel subdivision after his 2019 surgery. Zrowka agrees that neither he nor anyone on his behalf had ever communicated to BNSF that he should not be running on the Laurel subdivision because of his alleged condition. (Doc. 27 at 6; ¶ 25.) Zrowka chose to return to the Laurel subdivision by personally marking up on the south pool. (*Id.* at 7; ¶ 28.) He testified that he had no objections to returning to the Laurel subdivision because his doctor released him to full duty without any limitations. (*Id.*; ¶ 29.) It remains undisputed that Zrowka's physicians cleared him to return to work with no restrictions following the 2019 surgery. (*Id.*; ¶ 27.) Zrowka testified that he did not have any objection to his physician's decision that he could work full duty. (*Id.*) Zrowka testified that he would have communicated to his physician any objections to his release without limitations. Zrowka admitted that he did not communicate any objections to his physician regarding the release without limitations. (*Id.*)

Zrowka fails to provide any evidence that he put BNSF that he attributed his injuries to working on the Laurel subdivision. (*Id*. at 6-7.) Zrowka does not dispute that "at no point when Plaintiff was returning to work after his 2019 surgery did he or anyone on his behalf communicate to BNSF that given his alleged condition he should not be working as an engineer on the Laurel subdivision." (Doc. 44 at 8; ¶ 25.) Zrowka would have needed to take corrective action during the relevant time period to put BNSF on notice that the Laurel subdivision allegedly caused his injury in order to create a dispute of fact.

Moreover, BNSF could not have known that Zrowka believed his alleged injury was caused by working on the Laurel subdivision as Zrowka continued to work on the Laurel subdivision the same day of the alleged injury without having notified BNSF. (Doc. 27 at 3; ¶ 12.) After Zrowka allegedly woke up in pain in the Laurel hotel in the early morning hours of August 26, 2019, he rode back to Great Falls in the locomotive and work van without notifying dispatch that he needed relief or needed to get off the locomotive. (*Id*.) Further, Zrowka never communicated to BNSF that he was hurt after the alleged injury while on duty on August 26, 2019. (*Id*.) He also never encountered a BNSF officer that could have seen his alleged injury during his shift on August 26, 2019. (*Id*. at 3; ¶ 11.)

Like the plaintiff in *Danko*, Zrowka has not produced any evidence that he wanted or attempted to transfer job duties after returning from his 2019 surgery.

7

Neither Zrowka nor his physicians did anything to put BNSF on notice that Zrowka was susceptible to injury as he was released to full duty with no restrictions. He chose to mark up on the south pool and return to the Laurel subdivision without any complaint or sign of disagreement. Accordingly, the undisputed facts show that BNSF could not have known that Zrowka was unfit to return to the Laurel subdivision, and BNSF is entitled to summary judgment with respect to Zrowka's negligent work assignment claim.

## II.     FELA: Reasonably Safe Workplace

The Federal Employers Liability Act ("FELA") governs the right of railroad employees who are injured, become sick, or are killed in the course of their employment through an employer's negligence to sue the employer for damages. 45 U.S.C. § 51 (2006). The Locomotive Inspection Act ("LIA", formerly known as the Boiler Inspection Act, or "BIA") is a safety statute designed to enhance the likelihood of recovery by injured workers under FELA. 49 U.S.C. § 20701 (1994); *Urie v. Thompson*, 337 U.S. 163, 189 (1949). LIA does not offer a vehicle for a separate cause of action. LIA provides that "[a] railroad carrier may use. . . a locomotive. . . on its railroad line only when the locomotive...and its parts and appurtenances are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1). LIA requires that railroad companies regularly inspect their locomotives and that the locomotives must pass

federally prescribed tests. Thus, "[i]n order to state a violation of the LIA, the plaintiff must show that the complained of condition created a safety hazard." *Glow v. Union Pac. R.R. Co.*, 652 F. Supp. 2d 115, 1143 (E. D. Cal. 2009) (citing *Oglesby v. S. Pac. Transp. Co.*, 6 F.3d 603, 609 (9th Cir. 1993).

A plaintiff's burden of proof for causation and negligence when alleging a claim pursuant to FELA proves much lighter than in ordinary negligence cases. *Kernan v. American Dredging*, 355 U.S. 426, 438-39 (1958). The "quantum of evidence sufficient to present a jury question of causation" under FELA is "less than it is in a common law tort action." *Pierce v. Southern Pacific Trans. Co.,* 823 F.2d 1366, 1370 (9th Cir. 1987). The U.S. Supreme Court has instructed that the jury should determine liability under FELA so long as the evidence justifies "with reason, the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994) (citing *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 507 (1957)). A FELA plaintiff's evidence of causation need be no more than "plausible." *Rogers*, 352 U.S. at 506.

LIA makes it even easier for an injured worker to recover. LIA mandates strict liability when a plaintiff seeks to demonstrate a LIA violation. Strict liability would be proper if a defendant's violation of the LIA played any part, no matter how small, in bringing about the injury. *Oglesby v. Southern Pacific*, 6 F.3d 603, 608-09 (9th

Cir. 1993). The plaintiff does not need to prove negligence if he can prove a violation of LIA. Further, contributory negligence provides no defense. LIA states that no employee shall be "guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C. § 53.

This lowered threshold to prove causation does not mean, however, that FELA and LIA plaintiffs need make no showing of causation. It also does not mean that courts must allow expert testimony in FELA cases that would be inadmissible in other contexts. It means only that in FELA cases the negligence of the defendant "need not be the sole cause or whole cause" of the plaintiff's injuries. *Claar*, 29 F.3d at 503 (citing to *Oglesby v. Southern Pacific Trans. Co.,* 6 F.3d 603, 608 (9th Cir.1993). FELA plaintiffs still must demonstrate some causal connection between a defendant's negligence and their injuries. *Id.; see also Mayhew v. Bell S.S. Co.,* 917 F.2d 961, 964 (6th Cir.1990); *Edmonds v. Illinois Central Gulf R.R.,* 910 F.2d 1284, 1288 (5th Cir.1990); *Moody v. Maine Central R.R. Co.,* 823 F.2d 693, 695 (1st Cir.1987).

In *Oglesby v. S. Pac. Transp. Co.,* the plaintiff offered evidence that defendant railroad company violated the LIA by failing to furnish him with a proper and safe seat and that he injured himself in attempting to replace the defective seat. 6 F.3d 603, 606 (9th Cir. 1993). The court determined that this proof represented sufficient

evidence of causation to properly submit the LIA claim to the jury. *Id*. The court further determined that its conclusion was "supported by the [U.S.] Supreme Court's finding that the LIA is a safety statute which is to be liberally construed to afford protection to railroad employees. *Id*. (citing *Lilly v. Grand Trunk W. R.R.,* 317 U.S. 481, 486 (1943)).

Zrowka and experts Brian Hansen and Dr. Eckardt Johanning offer negligence and causation opinions plausibly linking Plaintiff's severe back injuries, multiple surgeries, and disability to workplace exposure to shocks, jolts and whole-body-vibration in the locomotive cab due to track conditions and defective seats. (Doc. 43 at 15-16.) Zrowka's deposition testimony and affidavit prove sufficient to raise a genuine issue of material fact as to whether the locomotive was in proper condition and safe to operate within the meaning of the LIA.

The jury—not the Court—should determine BNSF's liability under FELA because the evidence justifies "with reason, the conclusion that employer negligence played any part, even the slightest, in producing the injury." *See Claar*, 29 F.3d at 503 (citing *Rogers,* 352 U.S. at 507). Zrowka's credibility, the experts' credibility, and whether the condition of the seat as described by Zrowka remain for the trier of fact to consider. For summary judgment purposes, Zrowka's testimony and affidavit create a genuine issue of material fact as to whether the locomotive seat was in proper condition and safe to operate without unnecessary danger of personal injury

as required by under the LIA. *See Wooten v. BNSF Ry. Co.*, 2018 WL 2417858, at *7–8 (D. Mont. May 29, 2018), *report and recommendation adopted*, 2018 WL 4462506 (D. Mont. Sept. 18, 2018). BNSF's motion for summary judgment on Zrowka's FELA claim is denied.

### III. Cumulative Trauma

Cumulative trauma spinal injuries are caused by years of repetitive and excessive microtrauma. Such injuries are compensable under FELA. *Urie v Thompson*, 337 U.S. 163 (1949). BNSF argues that Zrowka, in alleging cumulative trauma injuries caused by LIA violations, possesses an obligation to identify specific locomotives and identify the dates and details of every defective seat or face dismissal on summary judgment. U.S. Supreme Court, Federal Appeals and District Court precedent establish otherwise. In cumulative trauma cases, a FELA plaintiff is not required to identify specific defective locomotives, is not obligated to identify specific defective seats or dates he encountered them, produce documentary evidence, photographs or company documents substantiating his testimony, or provide expert testimony for LIA claims involving defective seats.

Zrowka, alleging cumulative trauma under LIA, need not identify specific defects or specific defective locomotives. *Munns v. CSX Transportation*, 579 F.Supp. 924, 930 (N.D. Ohio 2008). The plaintiff in *Urie v. Thompson* contracted silicosis from inhaling sand which had been sucked into the cabs of thousands of

locomotives over many years. 337 U.S. 163, 195 (1949). The only evidence was the testimony of the plaintiff and a coworker about dust entering the cab through holes that were sometimes in the floorboards. *Id*. The U.S. Supreme Court recognized that on this testimony, "the jury was justified in finding that respondent breached the Boiler Inspection Act." *Id*.; *see also Munns v. CSX Transportation*, 579 F.Supp. at 930 ("Munns need not produce the specific seats which he claims were defective and contributed to his injuries. His testimony about his experiences, if credited, suffices. The same is true with regard to the railroad's complaint that Munns cannot point to specific locomotives.")

Zrowka also is not obligated to produce documentary evidence, photographs or company documents substantiating his testimony. Instead, the expert testimony and reports present "more than a scintilla of evidence" to show that BNSF should have known that Zrowka was at risk for developing a cumulative trauma injury. *See Aparicio v. Norfolk & Western Ry.*, 84 F.3d 803 (6th Cir. 1996). Cumulative trauma spinal injuries are well-recognized in the railroad industry. In *Allenbough v. BNSF Ry.,* the court approved of testimony based on Association of American Railroads publications and BNSF's own "Cumulative Trauma Prevention Task Force" documents pertaining to the risk of back injury. 832 F. Supp. 2d 1260, 1264 (E.D. Wash. 2011). In *Anderson v. BNSF*, 354 P.3d 1248, 1253 (Mont. 2015), the court reported that OSHA, CDC, National Academy of Sciences, and the U.S. military all

recognize occupational cumulative trauma injuries and all use a similar definition of causation: "a combined interaction of the observed stressor coupled with years of weakening of the musculoskeletal support mechanism by repetitive microtrauma which is characterized throughout literature on cumulative trauma disorders as the straw that broke the camel's back." The Montana Supreme Court noted that BNSF recognizes that cumulative trauma poses a known risk to train crews in its own safety manuals: "These manuals were published by the Association of American Railroads, to which BNSF belongs. According to these publications, cumulative trauma accounted for 60% of all railroad employee injuries. Safety audits in the 1980s revealed that numerous BNSF workers suffered from cumulative trauma injuries." *Id*. at 1253.

Zrowka is not required to identify specific defective seats or dates he encountered them. In *Munns v. CSX Transp., Inc*., the court rejected defendant railroad company's argument that plaintiff had to identify a single ride on a particular locomotive or seat that caused his injury. 579 F. Supp. 2d 924 (N.D. Ohio 2008). The court determined that to require plaintiff to do so would disregard the FELA statute's purpose and objectives. *Id*. at 931. Further, in *Grogg v. CXS Transp., Inc*., the plaintiff was unable to identify specific locomotives contributing to his cumulative trauma injuries. 659 F.Supp.2d 998, 1010 (Ind. 2009). The court

reasoned that the plaintiff was not required to prove his case on summary judgment. *Id*. at 1010.

Zrowka is not required to provide expert testimony for his LIA claim involving defective seats. *See Murphy v. CXS Transp., Inc.*, 2011 WL 3881021, *9-10 (E.D. Tenn. 2011). In *Murphy*, defendant railroad made similar arguments as BNSF makes here that a plaintiff is required to present expert testimony about loose and wobbly seats. The court denied the defendant railroad's summary judgment motion on the basis that no requirement exists for plaintiff to present expert testimony on loose and wobbly seats. *Id*. Expert testimony is not essential under FELA. *Id*. FELA "vests the jury with broad discretion to engage in common sense inferences regarding issues of causation and fault." *Lynch v. Northeast Regional Commuter R. Corp.*, 700 F.3d 906, 915 (7th Cir. 2012)

Accordingly, BNSF has failed to meet its burden of establishing an absence of any genuine issue of material fact as to Zrowka's cumulative trauma claim. BNSF fals to demonstrate that Zrowka possesses insufficient evidence to support this claim under the lower burden of proof threshold that FELA and LIA afford to cumulative trauma plaintiffs.

## CONCLUSION

A FELA case "must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 828 (2d Cir. 1994). The Court determines that a reasonable basis exists for the jury to find for Zrowka as to the majority of Plaintiff's claims.

BNSF is entitled to judgment as a matter of law on Zrowka's cause of action for negligent assignment. It remains undisputed that "at no point when Plaintiff was returning to work after his 2019 surgery did he or anyone on his behalf communicate to BNSF that given his alleged condition he should not be working as an engineer on the Laurel subdivision." (Doc. 44 at 8.) The most Zrowka has demonstrated is that BNSF was aware that he had sustained an injury requiring medical care. Zrowka has failed to create a fact issue regarding whether BNSF knew or should have known that they were assigning him to work that exceeded his physical capacity. *See Danko v. Union Pac. R.R.*, 2007 U.S. Dist. LEXIS 46972, *9-10.

Zrowka survives BNSF's motion for summary judgment as to his first and third causes of action. Zrowka may proceed with his FELA and LIA claim, alleging that BNSF failed to provide a reasonably safe work environment, as well as his cumulative trauma claim.

# ORDER

Accordingly, IT IS ORDERED that Defendant BNSF's Motion for Summary Judgment (Doc. 25) is GRANTED IN PART and DENIED IN PART.

DATED this 12th day of May, 2023.

_____
Brian Morris, Chief District Judge
United States District Court